## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

v.

ABDULRAHMAN EL BAHNASAWY,

Defendant.

No. 4:21-CR-00234

(Chief Judge Brann)

## MEMORANDUM OPINION

### APRIL 4, 2025

Abdulrahman El Bahnasawy is currently incarcerated for charges related to conspiracy to carry out a terror attack, and is awaiting trial for additional charges related to an attack that he allegedly orchestrated on a prison guard at his place of incarceration. However, El Bahnasawy also suffers from mental health issues. He has therefore moved to attend trial remotely or for a change of venue based on his mental illnesses, which he argues would be exacerbated by a move to another facility to attend trial. It may well be that transferring El Bahnasawy from his current place of incarceration in order to attend trial would be disruptive to his treatment. But those concerns cannot overcome the requirement that El Bahnasawy attend trial in person, as there is no indication that the treatment he would receive during a transfer would be constitutionally deficient, nor do the current circumstances militate in favor of transferring venue. Accordingly, as discussed below, El Bahnasawy's motion will be denied.

## I.    BACKGROUND

In 2021, Abdulrahman El Bahnasawy was indicted for two counts of assaulting a federal officer, in violation of 18 U.S.C. § 111(a)(1), two counts of assault with the intent to commit murder, in violation of 18 U.S.C. § 113(a)(1), two counts of assault with a dangerous weapon, in violation of 18 U.S.C. § 113(a)(3), two counts of possessing a prohibited object, in violation of 18 U.S.C. § 1791, and one count of providing material support and resources to a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B(a)(1).[1] That indictment arose from an incident that occurred in December 2020, when El Bahnasawy allegedly used a 14.5 inch sharpened metal weapon to attack two correctional officers, one of whom, as a result of the attack, lost an eye and suffered brain damage.[2]

Currently pending before the Court is El Bahnasawy's motion to attend his forthcoming trial remotely or, in the alternative, for a change of venue.[3] El Bahnasawy notes that he suffers from mental illness—specifically bipolar disorder—and this disorder is aggravated by changes in environment or disruption in treatment.[4] El Bahnasawy argues that a transfer to the Middle District of Pennsylvania for trial would disrupt his treatment to such an extent that it would violate the Eighth Amendment to the United States Constitution's prohibition on cruel and unusual punishment.[5]

---

[1]    Doc. 1.

[2]    *Id. See also* Doc. 38 at 21; Doc. 39 at 4.

[3]    Doc. 87.

[4]    Doc. 88 at 4-18.

[5]    *Id.* at 18-20.

Therefore, El Bahnasawy contends, Federal Rule of Criminal Procedure 43(a), which requires a defendant's presence at trial, is unconstitutional as applied to him.[6] El Bahnasawy alternatively asserts that a change of venue to the District of Colorado is appropriate.[7]

The Government opposes El Bahnasawy's motion.[8] Specifically, the Government contends that Rule 43 cannot be waived, and El Bahnasawy is receiving adequate medical care such that requiring his appearance at trial would not violate the Eighth Amendment.[9] Moreover, the Government argues that the relevant considerations weigh in favor of maintaining venue in the Middle District of Pennsylvania.[10] El Bahnasawy has not filed a reply brief, and the time to so do has lapsed, rendering the motion ripe for disposition.

## II.   DISCUSSION

### A.   Remote Appearance at Trial

Federal Rule of Criminal Procedure 43 provides that, with limited exceptions not present here, a "defendant must be present at . . . every trial stage, including jury impanelment and the return of the verdict."[11] The United States Court of Appeals for the Third Circuit has expressed that Rule 43 "does not enable a defendant in a felony case to expressly waive his presence at trial" but, rather, merely codifies "the existing

---

[6]   *Id.*
[7]   *Id.* at 20-22.
[8]   Doc. 90.
[9]   *Id.* at 7-12.
[10]   *Id.* at 12-16.
[11]   Fed. R. Crim. P. 43(a).

law that a felony defendant shall be present at every stage of the trial."[12] For that reason, "there is no perceptible due process violation by demanding that the defendant attend trial."[13]

Although the Third Circuit has not addressed the issue, the word "present" as used in Rule 43 has been universally construed by other circuit courts to "mean[] physical presence."[14] Consequently, those courts have held that "Rule 43 requires that the defendant be present, which simply cannot be satisfied by anything less than physical presence in the courtroom . . . [and therefore the Rule] does not permit the use of video conferencing as a substitute."[15]

Taken together, it is clear that El Bahnasawy cannot voluntarily absent himself from trial unless he is correct that forcing in-person attendance would violate his Eighth Amendment rights.

"The Eighth Amendment, through its prohibition on cruel and unusual punishment, prohibits the imposition of 'unnecessary and wanton infliction of pain contrary to contemporary standards of decency.'"[16] Prison officials "violate the Eighth Amendment when they act deliberately indifferent to a prisoner's serious medical needs by 'intentionally denying or delaying access to medical care or interfering with the

---

[12]   *United States v. Moore*, 466 F.2d 547, 548 (3d Cir. 1972).
[13]   *Id.*
[14]   *United States v. Lawrence*, 248 F.3d 300, 303 (4th Cir. 2001).
[15]   *United States v. Williams*, 641 F.3d 758, 764-65 (6th Cir. 2011). *See also Lawrence*, 248 F.3d at 304 (collecting cases).
[16]   *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)).

treatment once prescribed.'"[17] Such a constitutional violation is demonstrated if there is: "(1) a subjective showing that [prison officials] were deliberately indifferent to [the prisoner's] medical needs and (2) an objective showing that those needs were serious."[18]

It is well established that, "[w]here a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners."[19] "Because mere disagreement as to the proper medical treatment does not support a claim of an eighth amendment violation, when medical care is provided, [courts must] presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care."[20] Consequently, "[a]llegations of mere negligent treatment or even medical malpractice do not trigger the protections of the Eighth Amendment."[21]

Here, it is beyond dispute that El Bahnasawy has serious medical needs related to his diagnosed bipolar disorder.[22] Critical to this motion, El Bahnasawy asserts that his frequent moves during his childhood "had the unintended consequence of disrupting [El] Bahnasawy's socialization and development" and, once inside the Bureau of Prisons ("BOP"), his frequent transfers between facilities replicated "the deleterious

---

[17] *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)).
[18] *Id.* (internal quotation marks omitted).
[19] *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017).
[20] *Pearson*, 850 F.3d at 535 (internal citation and quotation marks omitted).
[21] *Palakovic*, 854 F.3d at 227.
[22] Doc. 88 at 3; Doc. 92 at 29.

social isolation of his adolescence" which worsened his mental health.[23] Even assuming this to be true,[24] however, there is no indication that a single transfer to another facility would violate any professional standards of care.

It is undisputed that El Bahnasawy has been receiving medical care for his bipolar disorder, and there are no allegations that such treatment is deficient; to the contrary, El Bahnasawy acknowledges that he is receiving medication and has been "stable" for years.[25] There is no indication whatsoever that the BOP will provide deficient treatment in the future when El Bahnasawy is transferred in preparation for trial. Presumably the BOP will continue to provide medication and any other necessary treatment to El Bahnasawy during and after his transfer.[26]

And while the transfer itself may be less than ideal and may even be somewhat disruptive to El Bahnasawy, there is no indication in the record that a transfer—assuming El Bahnasawy continues to receive his medication and other treatment—would be medically unwise. There is certainly no evidence at this point that such a transfer would be disruptive to an unconstitutional extent or fall below the relevant

---

[23] Doc. 88 at 5, 8-9.

[24] The documentation to which El Bahnasawy cites does not appear to confirm that frequent moves have or will result in a deterioration of his mental health. *See* Doc. 38-2 at 3-5.

[25] Doc. 88 at 18.

[26] El Bahnasawy asserts that his past treatment when he was admitted to the BOP appears to have been deficient and may have contributed to the attack underlying the current charges against him. Doc. 88 at 7-18. But, as the old financial adage goes, "past performance is not indicative of future results." There is no evidence that deficient mental health treatment is widespread within the BOP or otherwise likely to reoccur upon El Bahnasawy's transfer to a new facility, rendering any such assertion too speculative to support a finding that a transfer would be unconstitutional.

standards of care for individuals who suffer from bipolar disorder.[27] Accordingly, the Court cannot conclude that a transfer to the Middle District of Pennsylvania for trial would violate El Bahnasawy's constitutional rights and, pursuant to Rule 43, he must attend trial in person. His motion to attend trial remotely will be denied.

### B.    Change of Venue

Next, El Bahnasawy seeks to change venue for the trial from the Middle District of Pennsylvania to the District of Colorado.[28] Federal Rule of Criminal Procedure 21(b) provides that, "[u]pon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice."

The burden of proof to change venue rests upon the defendant and any such decision is "committed to the discretion of the district courts."[29] The Supreme Court of the United States has:

> enumerated ten factors that should be considered by a court in deciding whether to transfer a case. They are:
>
> (1) location of the defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of the place of trial; (9) docket condition of each

---

[27] There is no indication that, during the transfer, the BOP would engage in behavior that the Third Circuit has noted is violative of the Eighth Amendment, such as refusing to provide necessary care, denying reasonable requests for treatment such that El Bahnasawy would be exposed to undue suffering or tangible residual injury, or opting for an easier but less efficacious treatment. *See Palakovic*, 854 F.3d at 228.

[28] Doc. 88 at 20-22.

[29] *In re United States*, 273 F.3d 380, 387-88 (3d Cir. 2001).

district involved; and (10) any other special elements which might affect the transfer.[30]

"A balance should be struck among the most important factors in the particular case to determine whether transfer is appropriate."[31] "While the burden is on the defendant, the defendant is not required to show truly compelling circumstances for change of venue, but rather that all relevant things considered, the case would be better off transferred to another district."[32]

An examination of these factors demonstrates that a transfer of venue is not warranted at this time. The first factor, although facially weighing in El Bahnasawy's favor as he is confined within the District of Colorado, does not support a change of venue. The crux of El Bahnasawy's motion is his assertion that there are "significant risks to [El] Bahnasawy's well-being if he is once again uprooted and transported again to another facility."[33] But as the Government notes, there is no federal district court near El Bahnasawy's place of incarceration and, therefore, even if venue were transferred to the District of Colorado, he would likely need to be moved to another facility regardless.[34]

As to the second, third, and fourth factors, the location of events occurred within the Middle District of Pennsylvania, the documentary evidence is likely here as well,

---

[30]  *Id.* (quoting *Platt v. Minn. Min. & Mfg. Co.*, 376 U.S. 240, 243-44 (1964 (brackets and ellipses omitted)).

[31]  *Id.* at 288.

[32]  *Id.* (brackets, ellipses, and internal quotation marks omitted).

[33]  Doc. 88 at 22.

[34]  Doc. 90 at 14-15.

and the Government has represented that the witnesses are primarily located within this District, although the expert witnesses are apparently dispersed throughout the country.[35] Expense to the parties does not realistically favor either party, although Government counsel is located within this District, while defense counsel is geographically much closer to the Middle District of Pennsylvania than to the District of Colorado.

These factors, taken as a whole, indicate that venue is more convenient within the Middle District of Pennsylvania than in the District of Colorado. Accordingly, El Bahnasawy's motion to change venue will be denied.

## III.    CONCLUSION

El Bahnasawy's motion to attend trial remotely or for a change of venue will be denied.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[35]    *Id.* at 15.