IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 4:21-CR-00234 |
| v. | (Chief Judge Brann) |
| ABDULRAHMAN EL BAHNASAWY, | |
| Defendant. | |

MEMORANDUM OPINION

JANUARY 21, 2026

I.   BACKGROUND

On December 7, 2020, Defendant Abdulrahman El Bahnasawy, then an inmate at the United States Penitentiary, Allenwood,[1] attacked two corrections officers ("COs") with a sharpened metal object.[2] One CO lost an eye and suffered a traumatic brain injury in the assault; another received stitches to treat a wound to her finger.[3] During the assault, El Bahnasawy shouted "Allah[u] Akbar," and after the assault, COs recovered a note from his sock reading "[t]his is a terrorist attack for the Islamic State," and another from his locker stating in part, "[t]his is a terrorist attack for ISIS. I am one of their soldiers," and further containing a pledge of allegiance (known as a "bay'ah") to Abu Ibrahim al-Hashimi al-Quarashi, who at

---

[1]   *See United States v. El Bahnasawy*, 813 F. App'x 721 (2d Cir. 2020).
[2]   Doc. 150-1 (Stipulated Statement of Facts) at 1-3.
[3]   *Id.* at 3.

the time was the caliph of the Islamic State and the head of ISIS.[4] Shortly after the assault, El Bahnasawy carved "ISIS" in two locations in his prison cell, told others about ISIS and the Al Hayat Media Center (ISIS's propaganda arm), and described himself as an ISIS soldier.[5]

The record also reflects that ISIS uses publicly disseminated propaganda to encourage its supporters to commit attacks in its name.[6] ISIS singles out soldiers, law enforcement, and intelligence personnel in Western countries as preferred targets for such attacks.[7] ISIS takes credit for attacks that were inspired by its propaganda and considers the perpetrators "part of ISIS and soldiers of the caliphate," without regard to their actual communications with ISIS personnel.[8] El Bahnasawy's communications make clear that he was familiar with and promoted this propaganda.[9] El Bahnasawy admits these facts, and, on November 4, 2025, pled guilty to a nine-count indictment charging several crimes related to the assault.[10]

The form of the guilty plea varied slightly as to different counts. On Counts 1-8, El Bahnasawy fully admitted to his conduct and pled guilty unconditionally.[11] The Court accepted that plea and adjudged El Bahnasawy guilty of those counts.[12]

---

[4] *Id.* at 1, 4, 5.
[5] *Id.* at 5, 7.
[6] *Id.* at 5-6.
[7] *Id.* at 6.
[8] *Id.*
[9] *Id.* at 7 ("Bahnasawy told others about ISIS and the Al Hayat Media Center").
[10] *See* Docs. 140, 142, 143.
[11] Doc. 142.
[12] Doc. 144.

As to Count 9, which charged El Bahnasawy with providing or attempting to provide material support to a designated foreign terrorist organization in violation of 18 U.S.C. § 2339B(a)(1),[13] El Bahnasawy admitted the truth of the Government's factual recitation, but maintained that those facts were legally insufficient to establish guilt as a matter of statutory interpretation. On that understanding, El Bahnasawy chose to enter a plea of guilty to Count 9 on the condition that the Court would reserve entering judgment on that Count pending briefing and a legal determination regarding the factual basis for the plea.[14] The Court accepted the conditional plea and reserved the entry of judgment on Count 9.[15]

---

[13] Doc. 1 at 8-9.

[14] Doc. 143.

[15] Doc. 145; *see* Fed. R. Crim. P. 11(b)(2)-(3) (distinguishing between *accepting* a guilty plea after determining that it is voluntary from *entering judgment* on a guilty plea after determining that there is a factual basis for the plea); *United States v. Yednak*, 187 F. Supp. 2d 419, 420 (W.D. Pa. 2002) (conditionally accepting a guilty plea subject to a later determination that there was an adequate factual basis to support guilt); *United States v. Mitchell*, 104 F.3d 649, 651 & n.1 (4th Cir. 1997) (appeal of guilty plea where plea was accepted but factual basis was "deferred . . . until the sentencing hearing"); *United States v. Whitted*, 120 F.3d 264 (4th Cir. 1997) (unpublished table decision) (citing *Mitchell* to reject argument that "the district court erred by accepting [defendant's] plea without the Government first presenting an adequate factual basis"). Notably, the prior version of Rule 11's "factual basis" provision explicitly stated that "*notwithstanding the acceptance of a plea of guilty*, the court should not enter a judgment . . . without making such inquiry as shall satisfy it that there is a factual basis for the plea." *United States v. Cefaratti*, 221 F.3d 502, 509 (3d Cir. 2000) (quoting prior version of Fed. R. Crim. P. 11(f) (emphasis added)). In amending the rule to its current form, the Advisory Committee stated that "[t]hese changes are intended to be stylistic only, except as noted below," and did not otherwise discuss prior Rule 11(f) (new Rule 11(b)(3)). Fed. R. Crim. P. 11 advisory committee's note to 2002 amendments.

The parties have since briefed the Count 9 issue in the form of a motion to dismiss, which is now ripe for resolution. For the following reasons, El Bahnasawy's motion to dismiss is DENIED, and he is adjudged guilty of Count 9.

## II.   LEGAL STANDARD

El Bahnasawy moves to dismiss the indictment as to Count 9 but does not address the applicable standard of review. The Government contends that Federal Rule of Criminal Procedure 12(b)(3)(B)(v) provides the applicable standard because El Bahnasawy seeks dismissal. As the procedural history makes clear, however, the instant briefing is intended to assist the Court in its duty of determining whether there is a sufficient factual basis for El Bahnasawy's guilty plea. Dismissal would only be appropriate if the Court interprets the statute in El Bahnasawy's favor and the Government has no additional evidence to offer beyond that before the Court at this time. Accordingly, the standard for dismissal is not immediately applicable here.

The United States Court of the Appeals for the Third Circuit helpfully reclarified the standard for determining whether there is a factual basis for a plea just days ago.[16] To find a sufficient factual basis for the plea, the Court "need not be 'convinced beyond a reasonable doubt that an accused is guilty. It need only be convinced that there is sufficient evidence to justify the reaching of such a

---

[16]   *United States v. Schuster*, ___ F.4th ___, 2026 WL 100043, at *7-8 (3d Cir. Jan. 14, 2026) (citing *Cefaratti*, 221 F.3d at 509).

conclusion.'"[17] "The court may make that inquiry by looking to the defendant's own admissions, the government's proffer of evidence, the presentence report, or 'whatever means is appropriate in a specific case—so long as the factual basis is put on the record.'"[18] In reviewing the facts, "the Government is entitled to reasonable inferences in its favor."[19] The question, ultimately, is "whether the facts admitted to in connection with the guilty plea, taken as true, are legally sufficient to support a conviction."[20]

### III. DISCUSSION

Section 2339B(a)(1) criminalizes "knowingly provid[ing] material support or resources to a foreign terrorist organization, or attempt[ing] or conspir[ing] to do so."[21] "Material support or resources" is defined as "any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials."[22] The statute also clarifies that "[n]o person may be prosecuted under this

---

[17] *Id.* at *7 (quoting *Cefaratti*, 221 F.3d at 509).
[18] *Cefaratti*, 221 F.3d at 509 (quoting *United States v. Smith*, 160 F.3d 117, 121 (2d Cir. 1998)).
[19] *Schuster*, 2026 WL 100043, at *8 (citing *United States v. Avalos-Sanchez*, 975 F.3d 436, 441 (5th Cir. 2020)).
[20] *Id.* at *7.
[21] 18 U.S.C. § 2339B(a)(1).
[22] 18 U.S.C. § 2239B(g)(4); 18 U.S.C. § 2339A(b)(1).

section in connection with the term 'personnel' unless that person has knowingly provided, attempted to provide, or conspired to provide a foreign terrorist organization with 1 or more individuals (who may be or include himself) to work under that terrorist organization's direction or control or to organize, manage, supervise, or otherwise direct the operation of that organization. Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control."[23]

El Bahnasawy argues that a conviction under Section 2339B(a)(1) requires proof that the defendant directly coordinated or, in his terms, "conspired" with the FTO.[24] This argument is based on a discussion in *Holder v. Humanitarian Law Project* ("*HLP*") in which the Supreme Court stated that "'service' . . . refers to concerted activity, not independent advocacy."[25] Reasoning from the statute's exclusion of independent advocacy from the scope of the term "personnel," the Court explained that the statutory language similarly "indicates a connection between the service and the foreign group."[26] Thus, "the term 'service' cover[s] advocacy performed in coordination with, or at the direction of, a foreign terrorist

---

[23] 18 U.S.C. § 2339B(h); *see United States v. Dhirane*, 896 F.3d 295, 303 (4th Cir. 2018) (describing Section 2339B offense in element form). El Bahnasawy has stipulated that ISIS is a designated FTO and that he has known that fact since at least 2016. Doc. 150-1 at 7.
[24] Doc. 150 (Mot.).
[25] 561 U.S. 1, 23 (2010).
[26] *Id.* at 24.

organization."[27] Notably, however, the Court declined to decide "how much direction or coordination is necessary for an activity to constitute a 'service.'"[28]

The Supreme Court's discussion in *HLP* does not support El Bahnasawy's position. In contrast to his argument that coordination is *required*, the Court repeatedly stated that liability can attach when a defendant "performed in coordination with, *or* at the direction of, a foreign terrorist organization."[29] "Or is disjunctive, and terms connected by a disjunctive should be given separate meanings unless the context dictates otherwise."[30] Actions can be taken at the direction of an authority without any requirement of two-way contact; when orders come down from on high and a line soldier follows them, he has acted "at the direction of" another, despite the fact that he has never directly interacted with the superior.[31] Accordingly, under *HLP*, it is enough for the Government to demonstrate that the

---

[27] *Id.*

[28] *Id.*

[29] *Id.* (emphasis added); *see also id.* quoting Webster's Third New International Dictionary 2075 (1993) (defining "service" as "an act done for the benefit or at the command of another"); *United States v. Osadzinski*, 97 F.4th 484, 494 (7th Cir. 2024) (citing *HLP*, 561 U.S. at 25).

[30] *Pellegrino v. U.S. Transp. Sec. Admin.*, 937 F.3d 164, 178 (3d Cir. 2019) (cleaned up); *United States v. Woods*, 571 U.S. 31, 45-46 (2013) (quoting *Reiter v. Sonotone Corp.*, 42 U.S. 330, 339 (1979)); *see United States v. Wright*, 937 F.3d 8, 24 (1st Cir. 2019) ("The 'at the direction of' and 'in coordination with' theories 'provide alternative, independently sufficient grounds for' sustaining the conviction with respect to the 'material support or resources' element of the conspiracy offense at issue.").

[31] *United States v. Ullah*, No. 18-CR-0016, 2021 WL 21902, at *3 (S.D.N.Y. Jan. 4, 2021) (noting that "the common meaning of the word 'direction' . . . refers to a command from one person to another, not a two-party discussion of options" (citing *Direction*, Black's Law Dictionary (10th ed 2014)). El Bahnasawy relies on the appellate proceedings in *Ullah*, contending that the panel questioned the district court's reasoning at oral argument. Doc. 150 at 11-12. Oral argument occurred nearly four years ago, and I do not find appellate questioning, without the benefit of specific reasoning, to be particularly persuasive authority.

defendant acted pursuant to the FTO's directions or instructions in an effort to benefit the FTO, whether he received them through public or private channels, and without regard to whether he actually made contact with the FTO.

The statutory text confirms this view. *HLP*'s interpretation of "service" to exclude independent activity draws on the statutory exception for independent activity from the term "personnel" set forth in 18 U.S.C. § 2339B(h). But Section 2339B(h) exempts only "[i]ndividuals who act *entirely* independently of the FTO to advance its goals or objectives" from liability.[32] On the Court's reading, this is a very narrow exemption. It protects individuals who espouse similar *goals or objectives* to an FTO, but do not do so as a member of the FTO or to advance the FTO's specific mission.[33] For example, a person who independently reaches the conclusion that attacking Government buildings is good and who actively advocates for and takes such action is not liable under Section 2339B even though his conduct advances the goals and objectives of many FTOs.[34] But when a person takes the same action pursuant to the direction or instruction of an FTO, he has no longer acted "*entirely* independently" and liability can attach. Indeed, it is hard to conceive how a defendant who has consumed ISIS propaganda, pledges allegiance to ISIS, claims membership in ISIS, and commits an attack on behalf of ISIS of the type that ISIS

---

[32] 18 U.S.C. § 2339B(h) (emphasis added).
[33] *See HLP*, 561 U.S. at 24 ("[I]ndependently advocating for a *cause* is different from providing a service to a group that is advocating for that *cause*." (emphasis added)).
[34] *Cf. United States v. McVeigh*, 153 F.3d 1166 (10th Cir. 1998).

8

instructs its followers to commit, can be said to have acted "entirely independently" of the FTO.

Ample case law supports the Court's interpretation that a defendant can be liable under Section 2339B even if he has not made contact with the FTO. For example, in *United States v. Augustin*, the United States Court of Appeals for the Eleventh Circuit affirmed Section 2339B conspiracy convictions pursuant to the term "personnel" for defendants who "volunteer[ed] themselves to serve under the direction and control of Al Qaeda" after they took an oath to Al Qaeda and participated in reconnaissance of federal buildings, despite the fact that they never actually made contact with Al Qaeda.[35] In *United States v. Osadzinski*, the United States Court of Appeals for the Seventh Circuit affirmed a conviction under Section 2339B when a defendant wrote and attempted to distribute computer code designed to duplicate ISIS propaganda materials, despite the fact that he only "acted in response to what he perceived to be a solemn directive from ISIS contained in [a propaganda] video."[36] And the United States Court of Appeals for the Fourth Circuit in *United States v. Dhirane* held that it was unnecessary to determine whether defendants actually coordinated with an FTO in order to affirm their convictions.[37]

---

[35] 661 F.3d 1105, 1119-21 (11th Cir. 2011); *see United States v. Suarez*, 893 F.3d 1330, 1334-35 (11th Cir. 2018) (citing *Augustin* to affirm conviction under similar circumstances).
[36] 97 F.4th 484, 494-95 (7th Cir. 2024).
[37] 896 F.3d 295, 303 (4th Cir. 2018); *see also United States v. Alowemer*, 96 F.4th 386 (3d Cir. 2024) (Section 2339B conviction where defendant did not successfully make contact with FTO); *United States v. Jama*, 217 F. Supp. 3d 882, 892 (E.D. Va. 2016) (reasoning that "Congress intended to reach all persons who act on behalf of an FTO to further its goals and

9

El Bahnasawy's argument to the contrary is misplaced. He primarily contends that the Court should require proof of coordination between the defendant and the FTO which rises to the level of a conspiracy before liability attaches.[38] He argues that "there is no true distinction" between "the crime of conspiracy . . . and Section 2339B's 'service,' which requires concerted action."[39] The statutory text would beg to differ. As the Government correctly identifies, Section 2339B describes three different types of liability: (1) providing; (2) attempting to provide; "*or*" (3) conspiring to provide material support.[40] As before, the disjunctive "or" indicates that each path to liability should be given independent meaning.[41] By importing a conspiracy standard into the term "service," El Bahnasawy would collapse the textual distinction. If anything, the fact that "conspiracy" is an independent form of liability indicates that the level of coordination required by the term "service" must be something *less* than conspiracy.

This reading does not "end-run" the statutory conspiracy standard.[42] The concerted action requirement in "service" and the agreement required for liability on

---

objectives in significant ways") *aff'd* sub nom *Dhirane*, 896 F.3d 295; *United States v. Jones*, 383 F. Supp. 3d 810, 815 (N.D. Ill. 2019) ("[U]nder the plain language of the statute, Defendants need not interact with an actual or purported member of the FTO to be charged with violating § 2339B."); *cf. Wright*, 937 F.3d at 31 (noting the possibility that "intending to fulfill a publicly made ISIS decree constitutes acting 'at the direction of' ISIS").

[38] Doc. 150 at 5-10.
[39] *Id.* at 8.
[40] 18 U.S.C. § 2339B(a)(1); *see United States v. Kurbanov*, No. 1:13-CR-0120, 2015 WL 9255324, at *3 (D. Idaho Dec. 17, 2015).
[41] *Pellegrino*, 937 F.3d at 178.
[42] Doc. 150 at 6.

a conspiracy charge refer to two different types of coordination. The first asks whether the defendant had some general contact with the FTO such that Section 2339B charges only attach to defendants who genuinely seek to assist a designated FTO. The latter asks whether multiple individuals subject to Section 2339B formed an agreement to violate the statute.[43] This distinction is logical given that many FTOs are based internationally and the difficulty that may attend proving a conspiracy between someone subject to Section 2339B's jurisdictional reach,[44] and someone who is presently beyond that scope. Put simply, the "concerted action" required by the term "service" merely establishes that there must be some minimal connection between the defendant and the FTO, lest terrorism charges attach to anyone who shares any views with such an organization.

Even if all of the above analysis were incorrect, however, El Bahnasawy would still be liable under Section 2339B for two reasons. First, in the stipulated statement of facts, El Bahnasawy admitted that he had previously discussed his contacts with ISIS before his arrest in 2016.[45] El Bahnasawy points to no authority for the proposition that contacts with an FTO lose relevance with the passage of time for the purposes of Section 2339B, and any such assertion would undoubtedly not

---

[43] *See Wright*, 937 F.3d 8 (charging conspiracy when multiple non-FTO individuals formed an agreement with each other to provide material support to an FTO); *Dhirane*, 896 F.3d 295 (same); *Augustin*, 661 F.3d 1105 (same).

[44] 18 U.S.C. § 2339B(d).

[45] Doc. 150-1 at 7.

apply where the defendant has been prevented from contacting the FTO by virtue of his federal imprisonment and has nonetheless continuously expressed his commitment to and desire to communicate with the FTO.[46] Second, El Bahnasawy was explicitly and inherently charged with the attempt version of the offense.[47] "An attempt is comprised of two principal elements: (1) an intent to engage in criminal conduct and (2) a substantial step toward the commission of the substantive offense which corroborates that intent."[48] When he professed his allegiance to ISIS, stabbed two COs, and declared that the stabbings were "a terrorist attack for ISIS," El Bahnasawy clearly demonstrated that he intended to provide material support to ISIS and took the substantial step of actually providing that support in the form of the assault. That he was stymied from making contact with the FTO does not render his conduct innocent under Section 2339B.

---

[46] *See id.* at 7-8; *cf. United States v. Kushner*, 305 F.3d 194, 198 (3d Cir. 2002) (requiring "evidence of some affirmative act of withdrawal" before conspiracy liability ends).
[47] Doc. 1 at 8; Fed. R. Crim. P. 31(c).
[48] *United States v. Hayward*, 359 F.3d 631 (3d Cir. 2004) (citing *United States v. Cruz-Jiminez*, 977 F.2d 95, 101-02 (3d Cir. 1992)).

## IV. CONCLUSION

For the above-stated reasons, there is ample factual basis to support El Bahnasawy's guilty plea to Count 9. Accordingly, his motion to dismiss is denied, and I now adjudge him guilty of the offense.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge